## LOUNSBURY vs. PURDY.

The plaintiff, a married woman, having some means of her own, with which she wished to purchase a home for herself and family, a house and lot were purchased by the defendant and Q. who acted as her friends and advisers ; the parol agreement being that Q. should take the deed as her trustee, and hold the property for her use and benefit. The purchase money was accordingly paid by the plaintiff, and Q. took an absolute and unconditional conveyance of the property to himself, containing no intimation of the uses to which the estate was to be devoted, or of the trusts under which the title was taken and was to be held. The plaintiff went into and had ever since remained in possession. The premises were subsequently sold under a judgment against Q. and the defendant became the purchaser, at the sheriff's sale, and he claimed to hold the same, for his own benefit, by virtue of such purchase, and of a judgment held by him against Q. *Held*, that in respect to the purchase at the sheriff's sale, the defendant was a purchaser with notice of the equitable estate of the plaintiff; and that in respect to his own judgment, he was a creditor seeking satisfaction out of property to which his debtor had no equitable title. And he was directed to release to the plaintiff his interest in the premises, and was enjoined from setting up any claim thereto, under the sheriff's sale, or either of the judgments.

The lien of a judgment does not in equity attach upon the mere legal title to lands, existing in the defendant, when the equitable title is in another person.

And if a purchaser, under the judgment, has notice of the equitable title, prior to the purchase and the actual payment of the purchase money, he can not protect himself as a bona fide purchaser.

MOTION for judgment upon a special verdict rendered at the Westchester circuit, and upon the case reserved for further argument and consideration.    The complaint alledged that in the year 1846, the plaintiff, Catharine Lounsbury, wife of Henry Lounsbury, being in the possession of some-money which had been received by her from the estate of her deceased father and grandfather, and in the expectation of further receipts from the same source, she was induced to invest the same in the purchase of a house and lot, consisting of three acres of land, situate at Ossening, in the county of Westchester.    That the negotiations for the purchase of the said property, were made principally by the defendant, Joshua Purdy, with the assistance of the plaintiff's husband, Henry Lounsbury.    That the plaintiff

being a married woman, proposed to the defendant to take to himself the legal title of said property, in trust for her, and to hold the same for her benefit. That the defendant advised her to have the deed taken in the name of Clements Quereau. That Purdy made the agreement with Merritt, the owner of the property, for the purchase thereof; the consideration being $1000. That he then called upon Quereau, and advised him to take the deed in his name, in trust for the plaintiff, to which Quereau assented. The deed was accordingly executed to Quereau, on the 23d of May, 1846, a part of the consideration being paid at that time by the plaintiff, in the presence of the defendant. That for the remainder of the purchase money, the defendant and Quereau gave their promissory note to Merritt, which was subsequently paid by the plaintiff. That immediately after the execution of said deed, the plaintiff, with her husband and family, went into possession of the premises, and had ever since remained, and was still in the possession, and claimed to be solely beneficially interested in the same ; and that she had made very considerable improvements thereon, with her own money. That the deed was soon after its execution, recorded, and delivered to the plaintiff, and had ever since remained in her custody. That although such deed was taken in the name of Quereau, and although it did not appear upon the face of said deed, but that the property was conveyed to the said Quereau in his own right, yet in fact the same was conveyed to him as trustee of the plaintiff, and for her use and benefit. That Quereau never claimed any beneficial interest in said premises ; and that the said Purdy well knew the facts to be so, and well knew that all the moneys paid upon the purchase, were the moneys of the plaintiff, and well knew that the plaintiff was in possession of said premises as the beneficial owner thereof. That on the 16th of June, 1848, Quereau, by a deed duly executed and acknowledged, conveyed to the plaintiff the legal title to said premises, so that she now holds both the legal and equitable title to the same ; that on the same day, Quereau, by an instrument duly executed, under his hand and seal, acknowledged that he had purchased the premises in trust, to

and for the use and benefit of the plaintiff, and that the moneys paid therefor were the moneys of the plaintiff, and had been advanced to him for that purpose. That on the 10th of May, 1848, one Samuel L. Mott obtained a judgment against Quereau, in the supreme court, for the penalty of a bond, conditioned to pay $700, and for $17 damages and costs. That on the 15th of May, 1848, the defendant obtained a judgment against Quereau, by confession, for the penalty of a bond conditioned to pay $600, and for $17.25 damages and costs. That such judgments were not obtained for or on account of any matter connected with such trust. That under and by virtue of executions issued upon said judgments, the sheriff of Westchester advertised the premises in question to be sold on the 17th of August, 1848; that on the day of sale, and immediately after the sheriff opened the sale, the plaintiff gave a written notice, which was read to the sheriff and to all the persons present, of the facts in respect to her interest in the property, and forbade the sale. That the defendant was present, and heard said notice read. That notwithstanding the same, the sheriff, by the directions of the defendant or his attorney, proceeded to a sale of the property, and the same was struck off to the defendant for the sum of $500. That the defendant subsequently received a certificate of the sale from the sheriff, and now claimed to have an interest in the property, under and by virtue of said sale, in hostility to the plaintiff, and in defiance of her claims. The plaintiff prayed that the cloud which the defendant had thrown upon the title might be removed, and that he might be compelled to release all interest in the premises, which he might claim to have under and by virtue of the sale under the executions; and might be perpetually enjoined from setting up any claims to the same, under and by virtue of the said sale to him, and for other and further relief.

The defendant put in an answer, denying most of the material facts alledged in the complaint, and insisting that he bought the property in question for his own use and benefit, and afterwards sold it to Quereau. A replication was filed, and proofs were taken. The cause was tried at the Westchester circuit in April,

1851. The jury brought in a special verdict, by which they found that Quereau purchased the premises in question, under a parol agreement to hold the same in trust for the use and benefit of the plaintiff. That the premises were purchased and paid for with the plaintiff's own money. That at the time the defendant purchased the premises at the sheriff's sale, he had notice that the plaintiff claimed to be the owner of the property. That from the time of the purchase of said premises by Quereau from Merritt, the plaintiff had been in the actual occupation thereof, under the arrangement; that Quereau purchased and held the same in trust for the plaintiff, and that the defendant knew of such arrangement when the same was first made.

*O. J. Coffin*, for the plaintiff.

*R. R. Voris*, and *F. Larkin*, for the defendant.

BROWN, J. The facts established upon the trial of this action, disclose a design on the part of the defendant to appropriate a dwelling house and three acres of land, situate in the town of Ossening, in the county of Westchester, purchased for the plaintiff and with her means, to the payment of a debt due to him from one Clements Quereau, and another debt due from Quereau to one Samuel L. Mott. This, I think, he can not be suffered to do ; for unless I am mistaken, the law is armed with sufficient power to prevent so flagrant an act of injustice. He can not be regarded as a creditor without notice, nor as a bona fide purchaser, for the jury affirm by their verdict, which is entirely in accordance with the evidence, that he was cognizant of the objects and purposes for which the house and lot were purchased ; that the consideration was paid with the plaintiff's own money, and that Quereau was to take and hold the title for her use and benefit. He had notice also at the time of the sheriff's sale, that she claimed the property under the deed and declaration of trust, executed by Quereau to her. The proof upon the trial was, that the defendant negotiated the purchase of the

property for her, and suggested that Quereau should take the deed in his own name, and hold the premises as her trustee.

The lien of a judgment does not, in equity, attach upon the mere legal title to lands existing in the defendant, when the equitable title is in another person. And if a purchaser under the judgment has notice of the equitable title, before the purchase and the actual payment of the purchase money, he can not protect himself as a bona fide purchaser. (*Ells* v. *Tousey,* 1 *Paige,* 280. *Northrup* v. *Metcalf and others,* 11 *Id.* 570. *Averill* v. *Loucks,* 6 *Barb. S. C. R.* 19.) The defendant insists that the case falls within that provision of the statute of frauds declaring that trusts or powers over or concerning lands, shall not be created unless by act or operation of law, or by deed or conveyance in writing. (2 *R. S.* 69, § 6.) It must be remembered, however, that the plaintiff has had the actual possession of the premises since the execution of the deed to Quereau, claiming the beneficial interest therein, and that she paid the whole of the purchase money. I think it will presently appear, notwithstanding the form of the deed, that a trust does arise by act and operation of law.

The jury also affirm by their verdict, that Quereau, the judgment debtor, purchased the premises under a parol agreement to hold them in trust for the use and benefit of the plaintiff. The proof shows the nature of, and the reasons for entering into this parol agreement. She was a married woman and about to receive certain moneys from the estates of her father and grandfather, which she intended should be applied to the purchase of a house and a small piece of land, as a home for herself and family, her husband being unable, in consequence of pecuniary embarrassments, to provide a suitable and permanent residence for her. The house and lot in question were purchased by the defendant and Quereau, who acted as her friends and advisers, to carry into effect this intention ; and the parol agreement was that the latter should take the deed as her trustee and hold the property for her use and benefit. She seems to have reposed the most entire confidence in their honesty, as well as in their knowledge and ability, to make the purchase and take such a

conveyance as should assure her the enjoyment of the property, and accomplish the end she had in view.   No attention seems to have been bestowed upon the form of the deed.   She gave no direction in respect thereto ; and does not seem to have been present when the purchase was consummated and the deed given. And she appears never to have been aware that there was any omission in the form of the conveyance, or any thing wrong in the manner of transferring the title, until the event occurred which gave rise to this action.   The purchase money was her own exclusively ; the purchase was made for her exclusively, and she immediately went into, and has from that time to the present, enjoyed the exclusive possession.   Yet the deed contains no intimation of the uses to which the estate was to be devoted, or of the trusts under which the title was taken and was to be held, but it is an absolute and unconditional conveyance of the entire estate to Quereau.   The defendant therefore insists that, inasmuch as the deed of conveyance is absolute upon its face, and the trust exists only by parol, the house and lot became the property of Quereau in fee, and is subject to the lien of the judgments mentioned in the answer, and to be sold for the payment and satisfaction thereof.

The trust was certainly not created by deed or conveyance in writing, and it remains to be seen whether it may not have been created by implication or operation of law, within the meaning of the sixth and seventh sections of the act concerning "fraudulent conveyances and contracts relative to lands." (2 *R. S.* 69.)   Uses and trusts, except as authorized and modified in art. 2, tit. 2, chap. 1, part 2, of the revised statutes, are abolished.   A trust like that contemplated by the parties in this action, to wit, that Quereau should hold the estate for the use and benefit of the plaintiff, is not one of those enumerated in the 55th section, and is not therefore one of the express trusts recognized by the statute.   Had the deed given expression to the intention of the parties, by a limitation of the estate to the use of Catherine Lounsbury and her heirs, no trust would have been created.   Quereau, however, would not have taken the estate, and the lien of the judgments would not have at-

Lounsbury *v.* Purdy.

tached upon the land. The object of the statute is to forbid the creation of trusts merely nominal and not connected with some power of actual disposition and management. At the common law, the legal estate might have been in one person, while the equitable estate—the right to the possession and the enjoyment of the rents and profits—was in another. Both are now united, by operation of the statute, in one and the same person. This it does, not by merging the equitable into the legal estate, but by transferring the legal estate to the person having the beneficial interest, or entitled to the rents and profits. Thus, had the deed to Quereau contained the limitation that he should hold the estate upon trust for the use and benefit of the plaintiff and her heirs, and to suffer and permit her and them to enjoy the possession and to take the rents and profits to their own use, he would have taken no interest or estate whatever, but the plaintiff, by force of the 47th section, would have been deemed " to have a legal estate therein of the same quality and duration, and subject to the same conditions as her beneficial interest."

But the defendant insists that the grant being made to Quereau, although the consideration money was paid by the plaintiff, it falls within the provisions of the 51st section, which declares that in such case " no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance," subject to the claims of the creditors of the person paying the consideration money, and a trust shall result in favor of them to the extent that may be necessary to satisfy their just demands. The present case, however, is saved by the qualification contained in section 53, which is, that the provisions of the 51st section, " shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the consent or knowledge of the person paying the consideration, or when such alienee, in violation of some trust shall have purchased the land so conveyed, with moneys belonging to another person." These are the trusts arising by implication or operation of law, referred

Lounsbury *v.* Purdy.

to in the 6th and 7th sections of the statute in regard to fraudulent conveyances and contracts relative to lands. The evidence in the case sufficiently establishes that the deed to Quereau, was taken as an absolute conveyance in his own name, without the consent or knowledge of the plaintiff, for she was not present when it was executed, nor was she made aware of, or consulted in regard to its form. The facts make out the existence of one of those resulting trusts good at the common law, which the 53d section of the statute was specially framed to preserve and protect. In respect to the purchase at sheriff's sale under Mott's judgment, the defendant is a purchaser with notice of the equitable estate of the plaintiff, and voluntarily took upon himself all the hazards of that position; and in respect to his own judgment he is a creditor seeking satisfaction out of property to which his debtor had no equitable title. If he is restrained from asserting his claims over the property in controversy he loses nothing, because he parted with nothing upon the faith of it, and in no possible aspect can it be regarded as proceeding immediately or remotely from the creditors of Quereau. The deed and declaration of trust executed by him to the plaintiff of the date of the 16th of June, 1848, vests in the plaintiff such legal title as Quereau then had in the premises, and she is entitled to be relieved from the claim which the defendant makes under his own judgment, as well as that under the sheriff's sale.

Judgment must be entered that the defendant release to the plaintiff his interest in the premises, and that he be enjoined from setting up any claim thereto under the sheriff's sale, or either of the judgments referred to in the plaintiff's complaint, and that the plaintiff recover her costs.

[ORANGE SPECIAL TERM, September 1, 1851. *Brown,* Justice.]