1828.

Ells
v.
Tousley.

[*280]

---

## ELLS v. TOUSLEY.

Where certain lands, belonging to E., were sold under a loan office mortgage, and W., by request, bid off the same for E., E. being absent: E., a few days after the sale, refunded the money to W. At the time of the sale, T., one of the commissioners of loans, held a judgment against W.; T., together with his co-commissioner, in June, 1819, executed a deed to W.: in March, 1819, T. issued an execution against W., and in August, 1824, caused the mortgaged premises to be sold under judgment, and bid in the same himself. In September, 1819, W. executed to E. a release of all his interest in the premises; and it was agreed between them that no deed

should be executed to W. by the commissioners. T. purchased in the premises under his judgment, with a full knowledge of E.'s rights. Held that the purchase by T. could not be sustained, and that he could not retain the lien of his judgment upon the premises.

Under these circumstances, if the deed had been executed by the commissioners at the time of the sale, the title would have been in E. as a resulting trust, and W. could only have held the deed as a security by way of mortgage for the money advanced by him.

The lien of a judgment does not in equity attach upon the mere legal title to land existing in the defendant, when the ·equitable title is in a third person.[1]

And if a purchaser under the judgment has notice of the equitable title before his purchase and the actual payment of the money, he cannot protect himself as a *bona fide* purchaser.

1828

Ells'
v.
Tousley.

IN August, 1808, E. Boylston, being the owner of 16 acres of land in Manlius, mortgaged the same to the commissioners for loaning moneys in the county of Onondaga. He afterwards *conveyed the land in fee to T. Dimick, who, on the 28th of April, 1818, conveyed the same to the complainant in fee with warranty. The defendant was one of the commissioners of loans; and in September, 1818, in conjunction with the other commissioner, sold the premises at auction, upon the mortgage, and the same were bid in by J. O. Wattles, for the sum of $200. In June, 1819, a deed to Wattles, in pursuance of the sale, and bearing date the 16th of September, 1818, was executed and acknowledged by the commissioners, and has since been put upon record. At the time of the loan office sale, the defendant had a large judgment against Wattles, on which he issued execution in March, 1820, and in August, 1824, he caused the 16 acres to be sold on the execution, and bid in the same. In August, 1825, the complainant filed his bill in

December 2d.

[*281]

[1] Per Savage, Ch. J. in *Jackson* v. *Parker*, 9 Cow. 81; *Talbot* v. *Chamberlain*, 3 Paige, 219; *Grosvenor* v. *Allen*, 9 Id. 74; *Kellogg* v. *Kellogg*, 6 Barb. S. C. R. 117; see also 2 R. S. (4th ed.) 153, sec. 4.

The only remedy of the creditor to reach the interest of the debtor in a contract for the purchase of land, is by filing a bill in equity, after he has exhausted his remedy at law for the recovery of the debt, by the return of an execution unsatisfied. *Grosvenor* v. *Allen*, 9 Paige, 74; *Beck* v. *Burdett*, *Post*, 305.

this cause, setting forth the above facts; and also alleging that at the time of the loan office sale he was absent, and that Wattles, at the request of Dimick, advanced the money, and bid in the lot for the complainant; and that within a few days after the sale, the money was refunded by the complainant to Wattles, together with the sum of $5, which was received in full satisfaction of the money advanced by him on the bid. That in September, 1819, Wattles executed to the complainants a release, under seal, of all his interest in the lot, acquired by such sale. The bill further alleged that the deed was never in fact delivered to Wattles, but was fraudulently executed and put upon record by the defendant, for the purpose of making his judgment against Wattles a lien upon the land; and that the defendant purchased in the property, at the sheriff's sale, with a full knowledge of the complainant's rights, and threatens, after the time of redemption expires, to take a deed from the sheriff in pursuance of such sale. The defendant, in his answer, admitted the original title to the land in the complainant, as stated in the bill. He admitted that Wattles bid off the land, but denied that it was purchased for the benefit of the complainant, and alleged that he had been informed and believed Wattles bid off the property for his own benefit. He admitted that Dimick and the complainant informed him that Wattles bid off the land for *the complainant, but insisted that Wattles told him differently, and that he gave no credit to what Dimick and the complainant said. And the defendant insisted that if any such agreement was made with Wattles, it was void by the statute of frauds.

A replication to the answer having been filed, testimony was taken, and the cause was submitted to the court upon the pleadings and proofs.

*John Watson,* for complainant, cited Roberts on Frauds, 100; *Steere* v. *Steere*, (5 John. Ch. Rep. 12;) *Gale* v. *Nixon*, (6 Cowen, 448;) *Jackson* v. *Moore*, (6 Cowen, 725, 726, 2

Fonb. 36 and note;) *Pushmon* v. *Filliter*, (3 Ves. jun. 9;)
*Fisher* v. *Fields*, (10 John. R. 495;) *Ambrose* v. *Ambrose*, (1
Pr. Wms. 321;) *Neilson* v. *Blight*, (1 John. Cas. 205;) *Bots-*
*ford* v. *Burr*, (2 John. Ch. R. 410;) *Jackson* v. *Graham*, (3
Caines' R. 188;) *Jackson* v. *Town*, (4 Cowen R. 602;) *Jack-*
*son* v. *Chapin*, (5 Cowen R. 485.)

*N. P. Randall*, for defendant, cited *Philips* v. *Thompson*,
(1 John. Ch. R. 140;) 1 Phil. Ev. 190, 3; *Steere* v. *Steere*,
(5 John. Ch. R. 1;) 1 Phil. Ev. 131; *Underhill* v. *Van Cort-*
*land*, (2 John. Ch. R. 354, 5;) *James* v. *McKernon*, (6 John.
R. 543;) *Clarke* v. *Turton*, (11 Ves. 240;) Coop. Eq. Pl. 7;
1 R. L. 75, sec. 12; *Movan and wife* v. *Hays*, (1 John. Ch.
R. 340;) *King* v. *Boston*, (4 East. 577, note b;) *Botsford* v.
*Burr*, (2 John. Ch. R. 405;) *Lloyd* v. *Spillet*, (2 Atk. 150;)
*Willis* v. *Willis*, (2 Atk. 71;) *Jackson* v. *Voorhees*, (9 John.
R. 129;) *Sherill* v. *Crosby*, (14 John. R. 358;) *Denning* v.
*Smith*, (3 John. Ch. R. 333;) *Verplank* v. *Sterry*, (12 John.
R. 536;) *Goodrich* v. *Walker*, (1 John. Cas. 250;) *Jackson*
v. *Schoonmaker*, (2 John. R. 230;) *Shelton's case*, Cro. Eliz.
7; Jac. Law Dic. tit. *Deed* 2, sec. 7.

THE CHANCELLOR:—From the testimony in this case, it
is fully established that the property was bid in for the
benefit of the complainant, on the loan office sale.  Wattles
testifies that he did not purchase the property for his own
use; that he purchased it at the solicitation and request of
Dimick, in trust for the sole benefit of the complainant;
and upon *the assurance that he would refund the money          [*283]
in a few days, together with a compensation for his trouble
in attending the sale.  The amount bid was $200, but the
amount paid was only $60 or $70, the residue being for
the surplus moneys, for which a release was procured from
the mortgagor.  A short time after the sale, the money was
refunded to Wattles by the complainant, and it was then
agreed that no deed should be executed by the commis-
sioners in pursuance of such sale.  Dimick corroborates this

statement, and also testifies, that shortly after the sale he told the defendant that Wattles bid off the land for the complainant, who had refunded the money to him since the sale. Munro, the other commissioner, also testifies, that after the sale commenced, Dimick requested it to be stayed a short time, until he could procure some person to bid; and shortly afterwards Wattles came in and bid off the property, and informed him at the time he paid the money on such bid, that he bid in the land as the agent of the complainant, and had no other interest in the purchase, Under these circumstances, if the deed had been executed by the commissioners at the time of sale, the title would have been in the complainant, as a resulting trust, and Wattles could only hold the deed as a security by way of mortgage for the money advanced by him. (*Boyd* v. *McLean*, 1 John. Ch. Rep. 582.) It is not material to inquire in this case, whether the defendant, at the time he executed the deed to Wattles, and put it on record, for the purpose of making his judgment a lien upon the land, had a full knowledge of the complainant's rights. From what took place at the sale, he had sufficient to put him on inquiry, independent of the direct information that he received from Dimick of the repayment of the money.

If, therefore, he made an agreement to discharge other lands of Wattles from the lien of his judgment, and substitute a lien on the 16 acres in lieu thereof, it was a fraud upon the complainant's rights. But his judgment never could in equity, be a lien on this lot. The lien could not attach until the legal title was vested in Wattles by the execution of the deed by the commissioners. And long before any such conveyance was made, the equitable title to the land, at least, *was vested in the complainant, by the repayment of the money advanced, and by the agreement that no deed should be executed. I have lately had occasion to decide, that the lien of a judgment does not, in equity, attach upon the mere legal title to land in the defendant, when the equitable title is in a third person. And

[*284]

if a purchaser under the judgment has notice of the equitable title at any time before his purchase, and the actual payment of the money at the sheriff's sale, he cannot protect himself as a *bona fide* purchaser.[1]

The sale of the complainant's lands under the judgment, and the purchase by the defendant, after being informed of all the circumstances of the case, cannot be sustained. And the defendant must be perpetually enjoined from taking a deed from the sheriff in pursuance of such sale. He must also release and quit claim to the complainant, all right, title and interest to the sixteen acre lot, and discharge the same from the lien of his judgment, by a proper conveyance or release, to be settled by a master; and he must also pay to the complainant his costs in this suit to be taxed.

[1] Actual possession under an unregistered deed is constructive notice to such a purchaser, and imposes on him the duty of inquiring as to the rights of the person in possession. *Tuttle* v. *Jackson*, 6 Wen. 313; see also *Jackson* v. *Post*, 15 id. 588; *Hooker* v. *Pierce*, 2 Hill, 650; *Schutt* v. *Large*, 6 Barb. 373; *Embury* v. *Conner*, 2 Sanf. S. C. R. 99. But an equitable lien to secure a prior indebtedness, is not entitled to preference over a judgment lien, where both attach on the land at the same time. *Dwight* v. *Newell*, 3 Const. 185.